IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| OLIVIA DRAKE, on behalf of herself and those similarly situated | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | |
| HYUNDAI ROTEM USA, CORP. | : | NO. 13-0868 |
| Defendant. | : | |

**MEMORANDUM**

BUCKWALTER, S.J.                                                                                         August 28, 2013

Currently pending before the Court is Defendant Hyundai Rotem USA, Corp.'s Motion to Dismiss Plaintiff Olivia Drake's Amended Complaint. For the following reasons, the Motion is granted in part and denied in part.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

This case arises out of Plaintiff's claim that she and similarly situated employees did not receive appropriate compensation for overtime hours worked while in Defendant's employ. The facts, as taken from the Amended Complaint, are as follows. Named Plaintiff, Olivia Drake, was hired by Defendant on or about May 17, 2010 as an assembly line worker. (Am. Compl. ¶ 31.) Ms. Drake and the other members of the putative class are all current or former employees of Hyundai, mostly assembly line and production workers employed in the assembly of rolling stock, either by hand or with the assistance of machines ("Assembly-Line Plaintiffs"). (Id. ¶¶ 37–38, 50.) A small portion of the putative class consisted of employees who worked in manual,

clerical, or administrative positions in which they did not exercise independent discretion or possess the power to hire or fire employees, and they did not make business decisions such as purchasing, investment of Defendant's money or other resources, or oversee large complex projects with independence ("Non-Assembly-Line Class Plaintiffs").[1]  (Id. ¶ 51.)

Plaintiffs have two basic complaints about Defendant's practices.  Plaintiffs' first contention is that Defendant automatically deducted thirty minutes of paid time from their paychecks for each shift worked for a lunch break, including for shifts during which a meal break was not taken.  (Id. ¶ 69.)  Ms. Drake, in particular, claims that she almost always took significantly less than thirty minutes for her meal break before punching back in for work.  (Id. ¶ 72.)  The Amended Complaint also states, upon information and belief, that the rest of the Class Plaintiffs regularly took less than thirty minutes for meal breaks before punching back in for work.  (Id. ¶ 73.)  However, Defendant would automatically deduct thirty minutes of paid time from Plaintiffs' paychecks despite employees regularly not using the entire allotted meal break time.  (Id. ¶ 74.)

Secondly, in addition to being deprived of payment for meal times not taken, Plaintiffs claim they routinely worked overtime hours beyond their normal shift end-time.  (Id. ¶ 111.)  However, despite regularly working beyond their scheduled 8.5 hour days, Plaintiffs claim

---

[1]The Non-Assembly-Line Class Plaintiffs are also employees who Defendant designated as non-exempt and concluded were eligible for overtime pay pursuant to the Fair Labor Standards Act.  (Id. ¶ 52.)  In addition, the Non-Assembly Line Class Plaintiffs were also subject to policies that (1) required them to punch a time clock when beginning and ending their meal break period, (2) penalized them for tardiness if they punched out for lunch before the designated meal start time or punched back in for work after the designated meal end time, and (3) automatically deducted thirty-minutes for meal periods regardless of the actual length of the meal period recorded by the time clocks.  (Id.)

Defendant docked them for time in which they were absent from their normal hourly shifts. (Id. ¶¶ 110–111, 113, 115.) Additionally, Defendant failed to pay Plaintiffs overtime pay for hours worked in excess of their normal 8.5 hour shift, even accounting for the time marked absent from their normal shifts. (Id. ¶¶ 113, 115.)

On February 18, 2013, Plaintiffs filed suit in this Court bringing a class action for two claims, Count I for Violation of the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA"), and Count II for Violations of the Pennsylvania Minimum Wage Act, 43 P.S. § 333.102, et seq. ("MWA"). Defendants filed the instant Motion to Dismiss on May 13, 2013. Plaintiffs filed a Response in Opposition on May 30, 2013, and Defendants filed a Reply Brief on June 10, 2013. The Court will now consider the merits of the Motion.

## II.     STANDARD OF REVIEW

Under Rule 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. Fed. R. Civ. P.12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). In Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), the United States Supreme Court recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555. Following these basic dictates, the Supreme Court, in Ashcroft v. Iqbal, 556 U.S. 662 (2009), subsequently defined a two-pronged approach to a court's review of a motion to dismiss. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. Thus, although "Rule 8 marks a notable and

generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678–79. Second, the Supreme Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 679. "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct. Id.; see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232–34 (3d Cir. 2008) (holding that: (1) factual allegations of complaint must provide notice to defendant; (2) complaint must allege facts suggestive of the proscribed conduct; and (3) the complaint's "'factual allegations must be enough to raise a right to relief above the speculative level'") (quoting Twombly, 550 U.S. at 555)).

Notwithstanding these new dictates, the basic tenets of the Rule 12(b)(6) standard of review have remained static. Spence v. Brownsville Area Sch. Dist., No. Civ.A.08-626, 2008 WL 2779079, at *2 (W.D. Pa. July 15, 2008). The general rules of pleading still require only a short and plain statement of the claim showing that the pleader is entitled to relief and need not contain detailed factual allegations. Phillips, 515 F.3d at 233. Further, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

## III. DISCUSSION

Defendant moves to dismiss Count I because it contends that the FLSA claim is precluded by Plaintiffs' failure to exhaust the grievance procedure under the applicable Collective Bargaining Agreement ("CBA"). Defendant seeks dismissal of Count II because it claims the Minimum Wage Act claim is precluded by Section 301 of the Labor Management Relations Act.

### A. Whether Plaintiff's MWA Claim Is Pre-Empted By Section 301 of the Labor Management Relations Act

Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 141 et seq. ("LMRA") provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organization, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

In Caterpillar, Inc. v. Williams, 482 U.S. 386 (1987), the Supreme Court held that "Section 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective-bargaining agreement.'" Id. at 394 (quoting Electrical Workers v. Hechler, 481 U.S. 851, 859, n.3 (1987)). Thus, "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law." Townsend v. BC Natural Chicken LLC, No. Civ.A.06-4317, 2007 U.S. Dist. LEXIS 8282, at *13 (E.D. Pa. Feb. 2, 2007) (internal quotation omitted). State law is not pre-empted, however, where resolution of the state claim

does not depend upon interpretation of the collective-bargaining agreement. Id. In Townsend, the court found plaintiffs' MWA claim pre-empted by § 301 because it was dependent upon construction of the CBA at issue in that case. Id. at *15–16.

Defendant seeks to dismiss Plaintiffs' MWA claim because it contends that, like the claim in Townsend, Plaintiffs' claim here is dependent upon interpretation of the CBA and, thus, pre-empted by § 301 of the LMRA. Plaintiffs argue in response that the claims are not dependent upon the CBA because the hours worked by Plaintiffs can simply be added up and analyzed based on pay records based on the time clocks employed by Defendant. The Court disagrees. As Defendant correctly points out, the CBA contains numerous provisions that would need to be addressed by the Court in order to resolve Plaintiffs' claims. For example, among other provisions potentially at issue, (1) Article VIII, Section 2 of the CBA contains the provision at issue in this case concerning allotted thirty minute lunch breaks; (2) Article VIII, Section 3 allows for a five minute grace period for employees to cease working in order to clean up their work space; and (3) Article VIII, Section 6 designates certain paid time as overtime and prohibits the "pyramiding" of overtime. (Def.'s Mot. Dismiss, Ex. A to the Declaration of Rick Spradlin (attached as Ex. 1), Collective Bargaining Agreement ("Hyundai CBA").) All of these provisions are potentially at issue to determine whether Plaintiffs are entitled to relief under the MWA, regardless of the total number of hours worked based on Defendant's time records.

Because we find Plaintiff's MWA claim pre-empted by Section 301 of the LMRA, Defendant's Motion to Dismiss Count II of the Amended Complaint is granted.

**B. Whether Plaintiff's FLSA Claim Is Precluded By Her Failure to Exhaust the Grievance Procedure in the Collective Bargaining Agreement ("CBA")**

A collective-bargaining agreement that clearly and unmistakably requires union members to arbitrate a federal statutory claim is enforceable as a matter of federal law. 14 Penn Plaza LLC v. Pyett, 556 U.S. 247, 274 (2009). Additionally, the Third Circuit Court of Appeals has found that FLSA claims dependent upon interpretations of an underlying CBA must be resolved pursuant to the procedures contemplated in Section 301 of the LMRA, including arbitration. Vadino v. A. Valley Engineers, 903 F. 2d 253, 266 (3d Cir. 1990). Accordingly, where portions of a CBA are required to be interpreted in order to dispose of a claim, and where that CBA has a grievance procedure contained within its terms that clearly and unmistakably requires arbitration of a federal claim, a plaintiff's suit may be dismissed for failure to follow that procedure.

In the current case, a CBA was entered into between Defendant Hyundai and the Transport Workers Union of Philadelphia, Local 234, who represented Defendant's employees. The CBA contains a grievance section which contains the following language:

> A grievance shall be defined as any dispute or complaint on the part of the Union or Employer arising out of the terms and conditions of this Agreement. Grievances may be brought by the Union or the Employer, but no individual employee may file a grievance without the express approval of the Union. All grievances shall be signed by a representative of the Union. Grievances shall be processed in the following manner. . . [describing procedures, which eventually include arbitration].

(Hyundai CBA, Art. XXVII.) Defendant contends that Plaintiffs have failed to allege that the CBA grievance procedure was followed in this case and, as a result, should be dismissed.

Plaintiffs respond by (1) again challenging whether or not the CBA needs to be interpreted or applies to the facts of the underlying case, and (2) challenging whether the grievance clause itself is constitutional as a prospective waiver of substantive statutory rights and

7

the right to a judicial forum.² As we have already addressed above why the CBA must be interpreted in order to determine Plaintiffs' hours and whether they are entitled to overtime pay, we proceed to Defendant's second argument.

In Pyett, the Supreme Court left open the issue of whether a CBA that allows a union to prevent a claim from being arbitrated in the first place would preclude an employee from "effectively vindicating" their "federal statutory rights in the arbitral forum." Pyett, 556 U.S. at 273–74; see also Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79 (2000). In a dissent, Justice Souter addressed the very issue presented here, noting that, "the majority opinion may have little effect, for it explicitly reserves the question whether a CBA's waiver of a judicial forum is enforceable when the union controls access to and presentation of employees' claims in arbitration . . . which is 'usually the case.'" Pyett, 556 U.S. at 285 (Souter, J. dissenting) (quoting McDonald v. West Branch, 466 U.S. 284, 291 (U.S. 1984)). Plaintiffs allege that, because the Union controls whether or not an employee can even bring a claim in the first place—thus potentially prohibiting an employee from ever having their federal statutory rights heard in *any* forum—the grievance provision in the CBA should be struck down as unconstitutional.

In support of this argument, Plaintiffs cite to two cases. In De Souza Silva v. Pioneer Janitorial Servs., 777 F. Supp. 2d 198 (D. Mass. 2011), the court struck down a CBA grievance provision in the context of a sexual harassment claim, because the union had "the sole authority

---

²Plaintiffs offer a number of additional arguments about why the CBA should not prevent their FLSA claim, including challenging whether the grievance provision is a clear and unmistakable waiver of the right to bring suit outside of arbitration and whether the procedure encompasses FLSA claims. Because the Court finds the grievance provision itself unconstitutional, as discussed *infra*, we do not address these additional arguments.

to determine whether or not to pursue arbitration of an employee's claim." Id. at 206. The court added, "[i]n light of the fact that [plaintiff] had absolutely no control over whether her claim was ever addressed on the merits in the grievance and arbitration procedure, she has been denied a forum to 'effectively . . . vindicate [her] statutory cause of action' and the CBA waiver provision is unenforceable." Id. (quoting Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 28 (1991)).

Similarly, in Morris v. Temco Serv. Indus., No. Civ.A.09-6194, 2010 U.S. Dist. LEXIS 84885 (S.D.N.Y. Aug. 12, 2010), another employment discrimination case, the court also found the arbitration clause in the CBA at issue to be unenforceable. Id. at *15. In reaching its decision, the court noted that, "[i]t follows that where a collective bargaining agreement functions to prevent an aggrieved member from vindicating her statutory civil rights claims in any forum, it strips the statute of 'its remedial and deterrent function' and operates as a substantive waiver of federally protected civil rights." Id. at *12 (quoting Gilmer, 500 U.S. at 28.)

We agree with the reasoning in De Souza and Morris. Here, as in those cases, the language of the CBA states unequivocally that "no individual employee may file a grievance without the express approval of the Union." The Union thus acts as gatekeeper and can prevent the merits of an employee's federally protected statutory claim from ever being heard. Following the logic set forth in Pyett, if the clause itself is a clear and unmistakable waiver of the right to bring a claim in federal court (as Defendant argues is true in this case), an employee's federal claim may never end up being addressed. Moreover, such decisions on behalf of the Union may have little or nothing to do with the merits of the claim. See De Souza, 777 F. Supp. 2d at 206

9

("Unions may decline to pursue arbitration for legitimate reasons having nothing to do with the merits of an employee's dispute."); Ayala v. Union de Tronquistas de P.R., Local, 901, 74 F.3d 344, 346 (1st Cir. 1996) ("A union is accorded considerable discretion in dealing with grievance matters, and it may consider the interests of all its members when deciding whether or not to press the claims of an individual employee.").

Defendants counter by noting that in both De Souza and Morris, the union expressly declined to pursue the plaintiff's respective claims, whereas here there is no indication that Ms. Drake or any Class Plaintiff pursued arbitration but was denied by the Union. We find this argument unconvincing. As noted above, the Union could decide for reasons completely unrelated to the merits of Plaintiffs' claims to deny the opportunity for arbitration. To argue that an arbitration clause is not a prospective waiver of substantive statutory rights when it has not yet been enforced by the Union is to misunderstand the word "prospective"—the provision is unconstitutional because an employee is forced to waive the right to a federal forum *before* knowing whether the claim will even be heard in the first place.

Because we find the grievance provision in the CBA to be unconstitutional as a prospective waiver of a substantive statutory right, we find that Plaintiffs have not failed to exhaust their administrative remedies. Accordingly, Defendant's Motion to Dismiss Count I is denied.

    **C.    Whether Plaintiff's Class and Collective Action Claims Should Be Dismissed For Failure to Adequately Define the Class**

Finally, Defendant seeks to dismiss the class and collective action claims of Plaintiff because it argues the allegations of the Amended Complaint are insufficient to provide adequate

notice of the nature of the putative class. While the Third Circuit Court of Appeals has not addressed this issue specifically, district courts in the Third Circuit typically deny as premature motions to strike class action allegations filed before the plaintiff moves for class certification. See, e.g., P.V. v. Sch. Dist. of Phila., No. Civ.A.11-4027, 2011 U.S. Dist. LEXIS 125370, at *9-10 (E.D. Pa. Oct. 31, 2011); Korman v. Walking Co., 503 F. Supp. 2d 755 (E.D. Pa. 2007); NBL Flooring, Inc. v. Trumball Ins. Co., No Civ.A.10-4398, 2011 U.S. Dist. LEXIS 110518, (E.D. Pa. Sept. 27, 2011). In P.V., the court noted that, "Courts have good reason to decline to hastily strike class action allegations early in the litigation life cycle. Specifically, unless the parties have completed discovery and at least one party has moved for class certification, a court very rarely has the information necessary to conduct the 'rigorous analysis' inherent in the class certification decision." P.V., 2011 U.S. Dist. LEXIS 125370 at *12. We agree that it is premature at this stage to dismiss the class and collective allegations brought by Plaintiffs. Defendant will be given the chance to challenge the class adequacy at the class certification stage. As such, its Motion is denied as to the class and collective action allegations.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is granted in part and denied in part. As to Plaintiffs' claims under the Pennsylvania MWA, Defendant's Motion is granted as the claim is dependent upon interpretation of the applicable CBA and, thus, pre-empted by § 301 of the LMRA. Defendant's Motion is denied, however, as to the Plaintiffs' FLSA claim. Because the grievance procedure in the CBA acts as a prospective waiver of substantive federal statutory rights, it is unconstitutional. Thus, Plaintiffs had no need to pursue arbitration to exhaust their administrative remedies. To the extent Defendant's Motion challenges the

adequacy of the class, the Court finds such a challenge premature and better suited for the class certification stage.

An appropriate Order follows.